Next case is United States v. Lopez. Morning, Your Honors. Stephen Sluansky from the Federal Defender's Office in the Western District of New York on behalf of Jose Lopez, appellant. Mr. Lopez appeals his sentence of a violation of supervised release for two reasons. One, that it was procedurally unreasonable, and two, that it was substantively unreasonable. The first issue that Mr. Lopez would like to address on appeal is that it was procedurally unreasonable. In sentencing Mr. Lopez, the court sentenced him under a guideline range for a grade B violation for a violation of supervised release. However, Mr. Lopez actually pled guilty to a grade C violation of supervised release, which would be violation number one of his petition. Mr. Lopez agreed and admitted to illegally using substances that were illegal. However, he did not agree or admit to any of the other violations that were noted in his violation petition. Because the court sentenced Mr. Lopez under an erroneous guideline range- Your letter contained the same error, didn't it? The sentencing letter? It did not, Judge. But it says grade B violation here. I stated that the government and the probation office said that it was- That they would be requesting it. Did you take issue with that? I did not at the sentencing hearing, Judge, no. And I would agree that it is a plain error. Plain error. And that's the standard of review here. The court also considered Mr. Lopez's misconduct that he did not plead guilty to and sentenced him to a range of ten months of imprisonment followed by four months at a halfway house or as part of a one-year term of supervision. In this case, Mr. Lopez was sentenced in this way because he does have a history of mental health and substance abuse problems. However, in sentencing him, the district court judge said that he was not going to give Mr. Lopez a guideline sentence. Even if the court were to say that a ten-month sentence falls within the guideline range here and not take into consideration the four months at the halfway house, this would be a guideline sentence. And the district court judge said that he was not going to sentence Mr. Lopez to a guideline sentence in this case. The district court did not impose the sentence the way it did because it was worried about Mr. Lopez's mental health issues. But there's no guarantee that Mr. Lopez will actually spend the first four months after he completes his Bureau of Prison sentence at a halfway house. In my experience, halfway houses often run out of bed space. There is no space for inmates coming out of prison. More than likely, Mr. Lopez will leave the Bureau of Prisons. There will be a period of time where he will not be in the halfway house, and then he will be placed in the halfway house. It's our belief, and it's Mr. Lopez's assertion, that being in a halfway house is tantamount to confinement.  As well as in the district court's judgment that it was imposing. The sentence was substantively unreasonable in this case, because this was Mr. Lopez's first violation of supervision. I will note that there were previous modifications based on Mr. Lopez's mental health issues. His mental health issues, however, he was never violated and sent back to any punitive punishment for his conduct. Mr. Lopez currently is in the Bureau of Prisons. I know that he had sent the court a letter asking for a new counsel. I did address that with him last week. It appears that he is off of his medication. He is a schizophrenic. He does suffer from PTSD, and he's not taking his medication at the Bureau of Prisons. Because he said that he did not want to take his medication at the Bureau of Prisons. He was worried that if he missed a dose, he would go back into segregation, and that caused him concern. So when he does get out, there will be an issue for him needing to be medicated again, and he will not be able to return to society. The sentence of Mr. Lopez is substantively unreasonable because the four months does not guarantee that he won't re-offend again, and it does not keep society safe. Your first argument, correct me if I'm misremembering the record, but Correct, Judge. So for that argument, does it make a difference that the district court began by saying, I'm not going to give a guideline sentence? Why isn't that enough to cure that error? Well, I think in doing that, the judge, the district court had to determine what the guidelines actually were. And then determine that these are the guidelines, which he did, and then determine that he was not going to give a guideline sentence. It's not as if the district court said that I'm not going to consider the guidelines at all. And I think that the Aldine case makes it clear that the court has to consider the guidelines. In this case, the district court considered that there were guidelines. These were the guidelines that he was going to give, actually, what he thought was a below guideline sentence. Are there no further questions? Thank you. Good morning, your honors. May it please the court, Tiffany Lee on behalf of the United States Attorney's Office for the Western District of New York. We are here, your honors. The government does not quibble with the fact that there was an error with respect to the guidelines calculation. In terms of that, all the parties concerned thought that they were dealing with the grade B violation as opposed to the grade C violation. I think the- Isn't that error sufficient to remand and ask the district court? That you're- Go ahead. Sorry, your honor. I did not mean to interrupt you, Judge Livingston. I don't believe that that error in and of itself is sufficient. And I believe I would refer to the Supreme Court's decision in Molina-Martinez. The government concedes that, yes, under Molina-Martinez, a defendant does not have to show more and say, no, in addition to the fact that there's this error, my substantial rights were affected. But the government, under these particular circumstances on this record, believes that there is evidence to show in order for this court to exercise its discretion, I guess, under the fourth prong of Olano. And that's what the Supreme Court kind of recognized, because in its discussion of the fact that sometimes these calculations may be off, but that doesn't mean a district court judge can't sit down. The district judge makes its calculation early in the sentencing, right at the beginning of the sentencing. And it's not until after all the discussion that the judge says, I will not impose a guideline sentence. But it does, given the sequence, it does sound like he's starting from 18 to 24 months as his starting point. And what would be the harm in sending it back and saying what would you do if the starting point is 7 to 13 months? I think, Your Honor, obviously, it's the exercise of your discretion. So, we believe that there is a harm, because under these circumstances, Mr. Lopez got a below- I mean, you're saying we should be sure, based on this record, that if indeed he knew that it was 7 to 13, he would impose the same sentence. How can we be so sure of that? Your Honor, I think Judge Lambert started with the guidelines, because that's what he is obligated to do as a sentencing judge, that's where he's going to start. But ultimately, when he says that I'm going to depart from the guidelines, I'm not going to impose a guideline sentence. It's not even as if he's saying, you know what, I'm going to give him a reduction of two levels that bring him down to a grade C violation. He makes no mention in the record, I'm going to impose a sentence as if he violated a grade C as opposed to a grade B. He basically looked at the factors, looked at the fact that Mr. Lopez had all these modifications, looked at the fact that despite Mr. Slowinski's efforts to categorize this as just a single violation, it wasn't. It was a continued occurrence, a pattern of behavior. It's actually an ambiguous statement. The court will not impose a guideline sentence. Could mean a guideline sentence that is within the range of 18 to 24 months. That could very well be what he meant. Or he could be saying the guidelines are irrelevant. As far as I'm concerned, by a broader statement, the court will not impose a guideline sentence. I don't think it's the latter. I think with respect to this particular district court, this court has never found itself moored by the guidelines. So I think this was basically Judge Glamour's effort to craft a sentence that he felt appropriate, take the guidelines out of the equation. He considered, he saw where they were, but ultimately in looking at all the factors. Because he could have easily given Mr. Lopez a sentence of six months, Mr. Lopez a sentence of 12 months and a day. But he landed on ten months on his own. I mean, and this was contrary to the positions of probation and the government. But as you said at the beginning of your argument, Melinas Martinez is pretty clear that in most cases, that error at the beginning is going to be enough to create a reasonable probability, enough to send it back. And to ask the district court, would you have done anything differently? And it's our position that Melina Martinez, though, also says that the appellate court has a discretion in its framework to think about this. Is this an error such that it really affects the integrity, confidence and- Recommendation if they were working from the correct guideline range? I do not know. I do not know what- They probably would have recommended the guideline range of seven to 13 months. Perhaps, but they could have recommended something outside due to the fact, due to the nature of the circumstances. We don't know. That is correct, your honor. So, when Judge Glamour says I'm not imposing a guideline sentence, how does anybody know what he was talking about? If we don't know what the, if we don't have a correct guideline. I think he's saying that irrespective of what the guidelines are, he's going to impose a non-guideline sentence. So he's imposing a sentence based on the factors that were before him with respect to the violations, based on what Mr. Lopez presented as being a persistent, as being an individual who had persistent issues with drug use, mental health, failure to comply with probation, failure to report to probation. And while he only pled guilty to the fact that he used, on multiple occasions, cocaine, marijuana, and various other drugs. The fact remains that even in Mistress Lewinsky's sentencing letter, Mistress Lewinsky says that his client admits to not reporting to probation, which was violation number four on the petition. He's going to be incarcerated. I mean, there's just, there's not a lot of question about that. I mean, my question to you is, if there is some possibility that if the judge had had a correct understanding of the guidelines, he'd have given him less time, what's the possible objection from the government for asking him that question? I mean, why do you, I mean, I'm not going to spend any more time in jail, you're not going to spend any more time in jail. It makes no difference whatsoever to us, but it means, you know, you know, it's fewer weeks and fewer months than some, this guy's going to be locked up in a cage. Well, Your Honor, the fact remains is that, you know, the government just believes that on this record, so it's not a matter of how much time was spent. I mean, for Mr. Lopez, any day, as you know, based on what you're saying, is going to be a day in jail. Right, and there may be, you know, I have a hunch what Judge Larimer is likely to do, but no one knows. He might say, you know, if I'd known what the guideline was, I'd knock a couple months off. That, Your Honor, ultimately this is . . . Aren't you curious about that? It's a decision for your panel. Your Honor, I may have curiosities, as anyone does on a personal level, but in my position here, my argument is to you that basically the framework here is mainly on that last prong, and so it's up to this court to exercise its discretion with respect to the last prong. And then finally, we would have, you know, Mr. Slowinski raised in the reply brief the failure on the statement of reasons. To that end, the government would have no objection to a limited remand, just so that the court could append something on that statement of reasons form. But as to a full resentencing, you know, the government urges that whether or not this case falls within that last final prong of Ohana. Thank you. Thank you, ma'am. Thank you both.